UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
ICD CAPITAL, LLC.,                                          :
:
                Plaintiff,                       :   Civil Action No.: 14-CV-8355 (JFK)
:
v.                                                          :   **COMPLAINT**
:
CODESMART HOLDINGS, INC., IRA                               :   **JURY TRIAL DEMANDED**
SHAPIRO and SHARON FRANEY,                                  :
:
                Defendants.                      :
------------------------------------------------------------x

        Plaintiff ICD Capital, LLC ("ICD Capital"), as and for its Complaint against Defendants CodeSmart Holdings, Inc. ("CodeSmart"), Ira Shapiro ("Shapiro") and Sharon Franey ("Franey") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

        1.     CodeSmart is in the business of medical insurance coding education and training, specifically in regard to ICD-10, which is the tenth revision of the International Statistical Classification of Diseases and Related Health problems. The ICD-10 system, which replaces ICD-9, is the system utilized by the medical industry for medical diagnoses codes, by which all healthcare professionals request payment for services rendered in medical and health care situations.

        2.     This case arises from ICD Capital's purchase of securities in CodeSmart pursuant to a private placement memorandum dated June 17, 2013 (the "PPM"). Through the PPM, CodeSmart, and Defendants Shapiro and Franey, made false and misleading statements and representations to potential investors in order to fraudulently induce investors such as ICD Capital to participate in the private investment in a public entity transaction ("PIPE").

3. In reliance on the representations, ICD Capital purchased 1,453,202 shares of common stock in CodeSmart (the "Shares"), for the sum of $2,179,800. The date on which the PIPE transaction closed, and the Shares were purchased, was July 18, 2013 (the "Closing"). On July 18, 2013, the closing price per share of CodeSmart's common stock was $6.67. The closing price per share of CodeSmart's stock on October 10, 2014 was $0.005 per share, representing a decrease of over 99% that likely resulted from the market's realization that CodeSmart was not the company it portended to be.

4. As a result of the materially false and misleading statements made by Defendants, in the PPM and otherwise, which were relied on by ICD Capital in deciding to participate in the PIPE, ICD Capital has suffered substantial damages, and therefore brings this action in an effort to recover the losses incurred as a result of Defendants' illegal conduct.

## THE PARTIES

5. Plaintiff ICD Capital is a Texas limited liability company, with a principal place of business located at 455 Elm Street, Suite 100, Graham, Texas 76450. ICD Capital sets forth this Complaint on behalf of its members, who invested in CodeSmart through ICD Capital, as well as certain individual investors, to be detailed hereinafter, who also participated in the PIPE and subsequently assigned their interests in this litigation to ICD Capital for prosecution.

6. Defendant CodeSmart is a Florida Corporation, with a principal place of business located at 1330 Avenue of The Americas, 23rd Floor, Suite 23A, New York, New York 10019.

7. Defendant Ira Shapiro was the Chief Executive Officer and Chairman of the Board of Directors of CodeSmart at the time the events detailed herein occurred, and is a co-founder of the Company. Shapiro resides at 103 Waters Edge, Congers, New York 10920.

2

8. Defendant Sharon Franey is the Chief Operating Officer, a member of the Board of Directors, and a co-founder of CodeSmart, and held the aforementioned positions during the time the events detailed herein occurred. Franey resides at 5029 Apple Lane, Mohnton, Pennsylvania 19540.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Section 10(b) of the Securities Exchange Act of 1944 (the "Exchange Act") [15 U.S.C. § 78j] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. 240.10b-5], and common law.

10. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act [15 U.S.C. § 78aa]. This Court has supplemental jurisdiction over the remaining claims pursuant to U.S.C. 28 § 1367.

11. Defendant CodeSmart's principal place of business is located in the Southern District of New York. Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information by CodeSmart and individual Defendants Shapiro and Franey, occurred in substantial part in this District. Thus, venue is proper in this District pursuant to § 27 of the Exchange Act and 28 U.S.C. § 1391(b).

12. No member of ICD Capital, or any individual who has assigned their claim to ICD Capital for prosecution, is a resident of New York, Pennsylvania, or Florida.

13. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to interstate mail, interstate electronic mail, and interstate telephone communications, to disseminate the false and misleading statements and information.

## FACTUAL BACKGROUND

14.     CodeSmart was incorporated in the State of Florida on February 10, 2012. CodeSmart is in the business of medical insurance coding education and training, and was a developmental stage company at the time of the occurrence of the events detailed herein.

15.     In or around May 2013, CodeSmart determined that it was in its best interest to raise additional capital through a private investment in a public entity transaction, as the Company was in need of additional capital to fund its operations.

### The Private Placement Memorandum

16.     In order to effectuate the PIPE, CodeSmart drafted and disseminated the PPM to certain accredited investors, including Plaintiff, in an attempt to raise approximately $4,000,000 of capital through the sale of 2,666,667 shares of common stock in the Company (the "Offering"). The purchase price per share, pursuant to the PPM, was $1.50. The Offering was made pursuant to an exemption from the registration requirements of the Securities Act of 1933, and therefore the stock sold pursuant to the PPM was "restricted stock."

17.     The PPM contained numerous statements of material fact that were false and misleading, as well as statements that omitted material facts, thereby causing those statements to become false and misleading.

18.     The PPM states, in relevant part, that "[f]rom November 2012 to June 2013, the Company entered into several consulting agreements and established extensive relationship[s] with strategic partners around the country, including colleges and universities, consulting firms, healthcare companies, technology companies, staffing companies, and other outsourced coding/billing companies. Pursuant to these agreements, our strategic partners promote and

4

market our ICD-10 training courses, refer clients, organize public relationship activities, and build brand recognition for our productions."

19. Upon information and belief, CodeSmart had not actually formed the types of extensive "partnerships" and executed the types of agreements as set forth in the statement. Furthermore, Defendants intended for potential investors to rely on this fact when determining whether to participate in the PIPE, and Plaintiff did in fact rely on this statement of material fact when determining to participate in the PIPE.

20. The PPM also stated, in relevant part, that "[d]istribution arrangements are already in place with major companies. This gives CODESMART widespread reach and immediate access to hundreds of thousands of potential students. Each distribution agreement includes exclusivity for CODESMART, so competitors are locked out from our partners . . .."

21. Upon information and belief, CodeSmart did not actually have in place "distribution arrangements" providing for immediate access to "hundreds of thousands" of potential students, nor did every distribution agreement contain an "exclusivity" provision.

22. These statements, and others, included in the PPM were statements relating to past or present facts, and therefore were not "forward looking statements" subject to the protections of any safe harbor provisions.

23. The PPM also included financial statements that omitted key facts regarding CodeSmart's then-current financial situation, without which the financial statements were materially false and misleading.

24. Specifically, the financial statements in the PPM failed to include any information relating to the fact that CodeSmart, for the period ending June 30, 2013, maintained operating cash in the amount of $261,592, a stockholder's equity deficit of $992,504, and a loss from

5

operations of $1,256,465. This information was material to CodeSmart's financial condition, thus its omission from the financial statements included in the PPM caused said financial statements to be materially false and misleading.

**Other False and Misleading Statements Made by Defendants Prior to the Closing**

25. Prior to the Closing, Defendants made numerous materially false and misleading statements regarding the Company to the general public, as well as omitted material facts from certain statements which, as a result of the omission, rendered them materially false and misleading.

26. On May 14, 2013, Defendant Shapiro was quoted in a Forbes article relating to ICD-10 as stating that CodeSmart "ha[d] signed up affiliations with more than 60 colleges and universities . ... [and] signed an exclusive agreement with one of the largest hospital group[s] that represent[s] 2,800 hospitals to market CodeSmart's services," in addition to the fact that CodeSmart was "also negotiating agreements with several major hospitals to provide consulting services to assist in their ICD-10 transitions."

27. Upon information and belief, these statements constituted false and misleading statements of material fact, were made with either actual knowledge of falsity or reckless disregard for their truth, and were intended to be relied upon by potential future investors, including Plaintiff.

28. On May 28, 2013, Defendants issued a press release stating, among other things, that the Company's primary product, CodeSmart University, was the "exclusive strategic partner" for ICD-10 related services to Binghamton University (a division of the State University of New York system).

29. Upon information and belief, CodeSmart's agreement with Binghamton University was not an "exclusive" relationship, insofar as Binghamton University was permitted to engage other companies providing the same or similar services as CodeSmart, and was further misleading due to the omission of the material fact that Binghamton University had been previously offering the aforementioned CodeSmart University services, but had in reality only one individual ever register to take the course.

30. On June 4, 2013, Defendants issued a press release stating, among other things, that CodeSmart University was the "exclusive strategic partner" of a college in Northern New Jersey, and that the new relationship with the college would offer substantial growth and business opportunities. Upon information and belief, the above referenced college had not yet executed any agreements with CodeSmart, and had not authorized the dissemination of the press release.

31. On July 3, 2013, CodeSmart filed an Item 7.01 Regulation FD Disclosure stating that Shapiro, in his capacity as Chairman of the Board and Chief Executive Officer of CodeSmart, "recently presented at an online investor conference held by RedChip Companies and set forth the following projections of the financial performance of the Company: (a) Approximately $6,000,000 in gross revenues and net income of approximately $2,000,000 for the fiscal year ending December 31, 2013; (b) Approximately $60,000,000 in gross revenues and net income of approximately $26,000,000 for the fiscal year ending December 31, 2014; and (c) Approximately $135,000,000 in gross revenues and net income of approximately $63,000,000 for the fiscal year ending December 31, 2015.

32. On July 12, 2013, CodeSmart filed an amended Form 8-K with the SEC stating that CodeSmart estimated "about $10 million in revenues over the following 12 months from the date of this Report."

33. In or around mid-July 2013, Shapiro made a statement to two potential PIPE investors, with one of those potential investors being a member of Plaintiff, in which Shapiro represented that CodeSmart's stock was doing "great" and it would likely double and split again "very soon."

34. These aforementioned statements were materially false and misleading, and/or omitted material facts required to make the statements not false and misleading, and were made with the intent that potential investors would rely on their accuracy when deciding to purchase stock in CodeSmart. Moreover, Plaintiff did in fact rely on these statements when making the decision to participate in the PIPE transaction.

**The Purchase of Securities by ICD Capital, LLC and Certain Other Individual Investors**

35. Pursuant to the PPM, the members of ICD Capital, and certain other individual investors, executed subscription agreements (the "Subscription Agreements") by which they purchased common stock in CodeSmart pursuant to the PPM.

36. The decision by ICD Capital, LLC and those certain individual investors to participate in the PIPE, and execute Subscription Agreements for the purchase of the number of shares and for amount of money as described below, was made in reliance on the statements made by Defendants in the PPM, and to the general public prior to their execution of the Subscription Agreements.

37. ICD Capital, LLC executed a subscription agreement and thereby purchased 955,000 shares of CodeSmart's common stock for $1,432,500.

8

38. Timothy S. Kilpatrick, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 105,000 shares of CodeSmart's common stock for $157,500.

39. Marvin W. Berlin, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 80,000 shares of CodeSmart's common stock for $120,000.

40. Alfred G. Allen III, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 105,000 shares of CodeSmart's common stock for $70,000.

41. Christopher L. Collins, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 46,700 shares of CodeSmart's common stock for $70,500.

42. Peter A. Brokish, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 40,000 shares of CodeSmart's common stock for $60,000.

43. Kevin Kilpatrick, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 35,000 shares of CodeSmart's common stock for $52,500.

44. Coreland Energy, Inc., who has assigned its claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 33,334 shares of CodeSmart's common stock for $50,000.

45.     John Dulich, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 33,334 shares of CodeSmart's common stock for $50,000.

46.     J. Kirby Barry, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 20,000 shares of CodeSmart's common stock for $30,000.

47.     Richard Hetzel, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 13,334 shares of CodeSmart's common stock for $20,000.

48.     T. Jeff Russell, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 8,000 shares of CodeSmart's common stock for $12,000.

49.     Karen M. Allen, who has assigned her claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 7,000 shares of CodeSmart's common stock for $10,500.

50.     D. Stephen Fort, who has assigned his claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 4,500 shares of CodeSmart's common stock for $6,750.

51.     Jerry Ewing and Laurie Ewing, who have assigned their claims related to this action to Plaintiff for prosecution, executed a subscription agreement and thereby purchased 2,000 shares of CodeSmart's common stock for $3,000.

### The Subscription Agreement and Registration Statement

52. The Shares purchased pursuant to the Subscription Agreements were "restricted securities," and therefore could not be sold or transferred by the purchasers unless the securities were subsequently registered for sale with SEC, or the proposed transfer and/or sale of the securities was covered by an exemption to the registration requirements pursuant to state and federal securities laws and regulations.

53. Section 4.4 of the Subscription Agreements governed the "Registration Rights" of the Shares purchased by ICD Capital.

54. Section 4.4(a)(i) obligated CodeSmart, within sixty (60) days of the "Last Closing" (July 18, 2013), to file a registration statement with the SEC on either Form S-1 or Form S-3 thereby "registering" the Shares purchased in the PIPE.

55. Upon information and belief, CodeSmart, and Defendants Shapiro and Franey, failed to file a registration statement on Form S-1 or Form S-3 within sixty (60) days of the "Last Closing" on July 18, 2013.

56. Section 4.4(a)(ii) obligated CodeSmart to cause the registration statement filed with the SEC pursuant to Section 4.4(a)(i) to be "declared effective under the Securities Act as soon as possible, but, in any event, no later than the earlier of: (a) Two Hundred and Seventy (270) days after the initial Registration Statement is filed with the [SEC], or (b) the fifth (5th) Business Day following the date on which the Company is notified by the [SEC] that the initial Registration Statement will not be reviewed or is no longer subject to further review and comment."

57. Upon information and belief, CodeSmart, and Defendants Shapiro and Franey, failed to comply with Section 4.4(a)(ii) of the Subscription Agreements by failing to file a

registration statement with the SEC, and failing to cause said registration statement to become effective within the time frames required by the Subscription Agreements.

58. Defendants failure to fulfill its contractual obligations pursuant to the Subscription Agreements has caused substantial damage to ICD Capital, insofar as the registration statement-related provisions were relied upon by ICD Capital in making its determination to participate in the PIPE. Moreover, ICD Capital was unable to transfer or sell its Shares on the public market, and thereby mitigate its losses, as a result of Defendants' failure to file the registration statement and cause it to become effective.

### COUNT I
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### (Against All Defendants)

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58, as though fully set forth herein.

60. Defendants have engaged in illegal acts and practices, and a course of conduct which was intended to and did deceive ICD Capital by using false and misleading statements of material fact, and/or the omission of material facts necessary to cause statements not to be false and misleading.

61. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the internet, interstate electronic mail, and interstate telephone communications, to disseminate the false and misleading statements and information.

62. Defendants made these false and misleading statements of material facts and/or omissions of material fact in connection with the purchase or sale of securities.

63. Defendants knew, or were reckless in not knowing, that these representations of material fact and/or omissions of material fact were false and misleading.

64. Defendants had reason to believe, and did in fact believe, that ICD Capital would rely, and did in fact rely, on these statements of material fact when making the decision to participate in the PIPE.

65. As a result of Defendants' sale and ICD Capital's purchase of securities, ICD Capital has suffered substantial damage.

66. Defendants have therefore violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT II
### Fraudulent Inducement
### (Against All Defendants)

67. ICD Capital repeats and realleges each and every allegation contained in paragraphs 1 through 58, as though fully set forth herein.

68. ICD Capital and Defendant CodeSmart entered into written agreements for the purchase or sale of securities in CodeSmart.

69. In order to induce ICD Capital to execute the Subscription Agreements, and thereby make an investment into CodeSmart, Defendants made false and misleading statements of material fact, and omitted from certain statements material facts necessary to make said statements not false and misleading.

70. Defendants made these statements of material facts with knowledge of their falsity, or with reckless disregard for their truth.

71. ICD Capital relied on said statements of material fact when agreeing to participate in the PIPE transaction, and execute the Subscription Agreements.

72. As a result of being fraudulently induced to enter into those certain Subscription Agreements, and thereby purchase stock in CodeSmart pursuant to the PPM, ICD Capital has been substantially damaged.

## COUNT III
### Negligent Misrepresentation
### (Against All Defendants)

73. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58, as though fully set forth herein.

74. CodeSmart, Shapiro and Franey, individually and collectively, had a duty, pursuant to the Securities Act of 1933 and Exchange Act of 1934 as an issuer of securities in a transaction for the purchase or sale of securities, to provide Plaintiff with information that was neither false nor misleading as to any material facts, and a duty to provide information that did not omit material facts without which said statements would be false and misleading.

75. Due to Defendants' obligations to provide Plaintiff with accurate information, Plaintiff and Defendants were in a special relationship with regard to the negotiation of the stock purchase transaction.

76. Defendants made false and misleading statements, and omitted material facts in said statements, as alleged herein.

77. Defendants acted negligently in making statements of material fact that were false and misleading, and omitting material facts necessary to cause certain statements not to be false and misleading.

78. Defendants had reason to believe, and did in fact believe, that Plaintiff would rely, and did in fact rely, on these statements of material fact when making the decision to participate in the PIPE.

79. Defendants' misrepresentations to Plaintiff, and Plaintiff's reliance on those statements, has caused it substantial damage.

## COUNT IV
### Breach of Contract
### (Against CodeSmart Holdings, Inc.)

80. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58, as though fully set forth herein.

81. Plaintiff and Defendant entered into written agreements for the purchase or sale of securities in CodeSmart.

82. Accordingly, Defendants were contractually obligated to perform certain tasks within the time period(s) set forth in the Subscription Agreements.

83. Specifically, Defendants were required to file a registration statement, and make the registration statement "effective," within certain time periods set forth in the Subscription Agreement.

84. Defendants have failed to satisfy their obligations pursuant to the agreement, thereby breaching its contract with Plaintiff, to the detriment of Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks:

1. Damages;
2. Costs;
3. Attorneys' fees pursuant to the Subscription Agreement and as otherwise legally appropriate;
4. Punitive damages;
5. Statutory damages;

6. Interest; and

7. Such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated: October 20, 2014

COUNSEL FOR PLAINTIFF
ICD CAPITAL, LLC

By: _____
Joseph M. Pastore III
Pastore & Dailey LLC (JP1717)
485 Lexington Avenue
25th Floor
New York, NY 10017
646-665-2202 (tel)
646-661-4322 (fax)
***
4 High Ridge Park
Stamford, CT 06905
203-658-8454 (tel)
203-348-0852 (fax)

16