**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------- X

ICD CAPITAL, LLC, individually
and derivatively on behalf of
nominal defendant CodeSmart
Holdings, Inc.,

               <u>Plaintiff</u>,

  -against-

CODESMART HOLDINGS, INC. and
SHARON FRANEY,

              <u>Defendants</u>.
------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/19/2020

No. 14 Civ. 8355 (JFK)
**OPINION & ORDER**

<u>APPEARANCES</u>

FOR PLAINTIFF ICD CAPITAL, LLC:
    Joseph M. Pastore III
    PASTORE & DAILEY LLC

FOR DEFENDANTS CODESMART HOLDINGS, INC. and SHARON FRANEY:
    Sameer Rastogi
    Thomas P. McEvoy
    SICHENZIA ROSS FERENCE LLP

**JOHN F. KEENAN, United States District Judge:**

ICD Capital, LLC ("ICD"), a Texas investment company,

brings suit individually, derivatively, and on behalf of other

aggrieved parties (together with ICD, "Plaintiffs") against

CodeSmart Holdings, Inc. ("CodeSmart"), a Florida medical

insurance coding education and training company, and Sharon

Franey ("Franey"), a co-founder of CodeSmart and one of its two

executive officers and board members, for negligent

misrepresentation, breach of fiduciary duties, and aiding and

1

abetting fraud. CodeSmart's other co-founder, executive officer, and board member, non-party Ira Shapiro ("Shapiro"), is under indictment by the U.S. Attorney's Office for the Eastern District of New York for related conduct. After a more than four-year delay while this action was stayed pending resolution of the criminal case and related investigations, Plaintiffs elected to withdraw their claims against Shapiro to allow this action to proceed against CodeSmart and Franey. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Before the Court is a motion by CodeSmart and Franey (together, "Defendants") to dismiss the First Amended Complaint ("the FAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons set forth below, the motion is GRANTED.

## I. Background

### A. Factual Background

The Court takes the following facts and allegations from the FAC and deems them to be true for the purpose of this motion.

CodeSmart is a Florida corporation with its principal place of business in New York, New York. (Am. Compl. ("FAC"), ECF No. 71, ¶ 6.) Franey is the company's Chief Operating Officer ("COO"); she resides in Mohnton, Pennsylvania. (Id. ¶ 7.) Shapiro was the Chief Executive Officer ("CEO"), Chairman of the

Board of Directors ("Chairman"), and, along with Franey, co-founder of CodeSmart; he resides in Congers, New York. (Id. ¶ 8.) Franey and Shapiro were the only officers, board members, and founders of CodeSmart, and they conducted the business out of their homes in Pennsylvania and New York, respectively. (Id. ¶¶ 2, 11.)

Beginning in or around May 2013, CodeSmart attempted to raise approximately $4 million through the sale of approximately 2.7 million shares of the company's common stock by means of a private investment in a public entity transaction ("the PIPE"). (Id. ¶¶ 3, 16, 18.) The purchase price was $1.50 per share. (Id. ¶ 19.) In order to effectuate the PIPE, CodeSmart prepared a private placement memorandum dated June 17, 2013 ("the PPM"). (Id. ¶¶ 3, 17.) The PPM was disseminated to accredited investors, including ICD, a Texas limited liability company with its principal place of business in Graham, Texas.[1] (Id. ¶¶ 5, 17.) Over the next three months, ICD and other investors purchased more than $2.1 million of CodeSmart's securities in reliance on statements and information that the company provided in the PPM, its press releases and filings with the U.S.

---

[1] ICD asserts that complete diversity exists because no member of ICD nor any individual who assigned their claims to it for prosecution in this action is a resident of New York, Pennsylvania, or Florida. (FAC ¶ 10.)

Securities and Exchange Commission ("the SEC"), and public and private statements by Shapiro. (Id. ¶ 3.)

Plaintiffs allege that, as the COO of CodeSmart, Franey had access to information about the company and its finances, and she had the responsibility to confirm the accuracy of the information that the company disseminated to potential investors. (Id. ¶¶ 2, 95–100.) Franey, however, failed to fulfill this important duty because many of the statements on which Plaintiffs relied contained materially false and misleading information and deliberately misrepresented CodeSmart's business and financial condition. (Id. ¶¶ 2–3, 11.) When CodeSmart's share price plummeted the following year, Plaintiffs' $2.1 million investment became worthless. (Id. ¶¶ 3, 74–78.)

Plaintiffs specifically allege that the following false statements and fraudulent conduct caused their loss:

1. The PPM. To facilitate the PIPE, CodeSmart drafted and disseminated the PPM to interested investors to provide them with information about the company, including statements that CodeSmart (1) had entered into several consulting agreements and had established extensive relationships with strategic partners around the country; (2) had distribution arrangements with major companies which gave CodeSmart widespread reach and immediate access to hundreds of thousands of potential students; (3) had

entered into a long-term agreement with one of the country's
largest hospital group purchasing organizations; (4) had been
endorsed by two regional extension centers in Florida; and (5)
provided consulting services. (Id. ¶¶ 3, 17, 21, 24, 27, 29,
31.)  Plaintiffs, however, assert "upon information and belief"
that each of these factual statements were false. (Id. ¶¶ 22–
23, 25–26, 28, 30, 32.)  Plaintiffs also allege that the PPM
omitted "key facts" and did not accurately present the company's
financial condition. (Id. ¶¶ 35–37.)

  2.  Press Releases.  In May and June 2013, CodeSmart issued
press releases stating that the company was an "exclusive
strategic partner" to certain universities, which offered
CodeSmart substantial growth and business opportunities. (Id.
¶¶ 38, 40.)  Upon information and belief, however, CodeSmart did
not have such relationships. (Id. ¶¶ 39, 41.)  Additionally, in
a June 2013 Forbes article, Shapiro stated that CodeSmart had
affiliations with more than 60 colleges and universities and it
had signed an exclusive agreement with one of the largest
hospital groups in the country. (Id. ¶ 42.)  Upon information
and belief, this too was false. (Id. ¶¶ 43–44.)

  3.  SEC Filings.  In early-July 2013, CodeSmart filed a
Form 8-K with the SEC stating that Shapiro, in his capacity as
Chairman and CEO, presented at an online investor conference and
projected that CodeSmart's gross revenue and net income would

increase dramatically over the following three years. (Id. ¶ 45.) Nine days later, CodeSmart filed an amended Form 8-K in which the company estimated that it would earn approximately $10 million in revenues over the next 12 months. (Id. ¶ 46.)

4. _Private statements by Shapiro._ Finally, in or around mid-July 2013, Shapiro told two potential PIPE investors, one of whom was a member of ICD, that CodeSmart's stock was doing "great," and it would likely double and split again "very soon." (Id. ¶ 47.)

Relying on these representations, Plaintiffs executed subscription agreements by which they purchased CodeSmart's common stock for $1.50 per share. (Id. ¶ 48.) The shares were sold as "restricted securities," which meant that they could not be resold or transferred by Plaintiffs until the shares were registered for sale with the SEC or covered by an exemption. (Id. ¶ 65.) Accordingly, the subscription agreements obligated CodeSmart to file a registration statement and ensure it was declared effective. (Id. ¶¶ 66–68, 70.) Neither CodeSmart, nor Shapiro or Franey, however, complied with the requirement, which caused CodeSmart to breach its contractual obligations to Plaintiffs. (Id. ¶¶ 69, 71–72.) As a result, Plaintiffs were not able to transfer or sell their shares on a public market to mitigate their losses, and Plaintiffs' investments became worthless when the stock price sank to $0.01 per share in July

2014, and the SEC suspended trading in CodeSmart stock in 2015 and revoked its registration in 2016.  (Id. ¶¶ 73–78.) Plaintiffs allege that at the time they purchased their shares pursuant to the PPM, Franey's ownership interest was valued at over $20 million.  (Id. ¶ 15.)

In 2013 and 2014, the SEC and the U.S. Department of Justice launched investigations into CodeSmart, Shapiro, Franey, and others for suspected fraudulent manipulation of CodeSmart's share price and improper sales of CodeSmart stock in a "pump-and-dump" scheme.  (Id. ¶ 79.)  Plaintiffs allege that the investigations determined that Shapiro and other unnamed individuals fraudulently received millions of dollars in profits during the scheme.  (Id. ¶ 81.)  In 2014, Shapiro and his co-conspirators were indicted in the Eastern District of New York on various fraud and conspiracy charges related to the market manipulation of four publicly traded companies, including CodeSmart.  (Id. ¶ 82.)  The SEC also initiated proceedings against Shapiro and his co-conspirators.  (Id. ¶ 83.)  The criminal and SEC complaints allege that Shapiro issued company press releases and made public filings, several of which contained false and misleading information, and that CodeSmart's stock price in July 2013 did not reflect the economic reality of the company.  (Id. ¶¶ 85, 88.)  In 2017, Shapiro pleaded guilty to conspiracy to commit securities fraud.  (Id. ¶ 91.)

Shapiro's sentencing is currently scheduled for April 17, 2020.
See United States v. Discala, et al., 14 Cr. 399 (ENV)
(E.D.N.Y.).

### B. Procedural Background

Plaintiffs initiated this action in October 2014, by filing a complaint against CodeSmart, Franey, and Shapiro pursuant to Section 10(b) of the Securities Exchange Act of 1944 and Rule 10b-5 promulgated thereunder by the SEC. (ECF No. 1.) The complaint asserted three counts against all three defendants for violation of Section 10(b), fraudulent inducement, and negligent misrepresentation; and one count only against CodeSmart for breach of contract. (Id.) Franey and CodeSmart each moved to stay the proceedings until final disposition of the criminal action, which the Court granted on August 21, 2015. (ECF No. 39.)

On January 29, 2019, CodeSmart and Franey consented to lifting the stay and reinstating the case. (ECF No. 68.) On February 4, 2019, Plaintiffs filed the FAC, which removed Shapiro as a defendant and asserted two direct claims against Franey for negligent misrepresentation and aiding and abetting fraud, and two derivative claims against her, brought by Plaintiffs on behalf of CodeSmart, for breach of fiduciary duties and aiding and abetting Shapiro's breach of fiduciary duties that he owed to CodeSmart. (ECF No. 71.) The FAC

asserted that ICD was not required to make a demand on the CodeSmart Board of Directors—i.e., Shapiro and Franey—before pursuing the derivative claims because such a demand would have been futile. (FAC ¶ 101.) On April 19, 2019, CodeSmart and Franey moved to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF No. 74.)

## II. Legal Standard

### A. Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). On a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the Court may not credit "'naked assertions' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (brackets omitted) (quoting Twombly, 550 U.S. at 557), nor "conclusory allegations or legal conclusions couched as factual allegations," Rothstein

v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013). "[T]he purpose of
Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a
streamlined fashion, the formal sufficiency of the plaintiff's
statement of a claim for relief without resolving a contest
regarding its substantive merits.'" Halebian v. Berv, 644 F.3d
122, 130 (2d Cir. 2011) (quoting Glob. Network Commc'ns, Inc. v.
City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).

### B. Rule 9(b) Heightened Pleading Standard

In addition to the requirements of Rule 12(b)(6), a
complaint alleging fraud must satisfy the heightened pleading
requirements of Federal Rule of Civil Procedure 9(b) by stating
the circumstances constituting fraud "with particularity." ATSI
Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir.
2007). To satisfy this requirement, the complaint must "(1)
detail the statements (or omissions) that the plaintiff contends
are fraudulent, (2) identify the speaker, (3) state where and
when the statements (or omissions) were made, and (4) explain
why the statements (or omissions) are fraudulent." Eternity
Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168,
187 (2d Cir. 2004) (quotation marks omitted). "[T]he adequacy
of particularized allegations under Rule 9(b) is case- and
context-specific." United States ex rel. Chorches for Bankr.
Estate of Fabula v. Am. Med. Response, Inc., 865 F.3d 71, 81 (2d
Cir. 2017) (quotation marks and ellipsis omitted).

Rule 9(b)'s particularity requirement does not apply to allegations regarding intent, knowledge, or other conditions of the mind. Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). However, "[w]hile Rule 9(b) allows mental states to be 'alleged generally,' this relaxation of the heightened pleading requirement is not to be mistaken 'for a license to base claims of fraud on speculation and conclusory allegations.'" Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 176 (2d Cir. 2015) (quoting Lerner, 459 F.3d at 290). Accordingly, "[i]n addition to alleging the particular details of a fraud, 'the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 179 (2d Cir. 2004) (quoting Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999)). "An inference is 'strong' if it is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" Loreley, 797 F.3d at 176-77 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007)).

**III.  Discussion**

Plaintiffs assert two derivative claims against Franey for damages she allegedly caused to CodeSmart, and two direct claims against her for damages she allegedly caused to Plaintiffs themselves.  The Court begins with the direct claims.

## A.  Negligent Misrepresentation

Plaintiffs allege that "CodeSmart and Franey, individually and collectively, had a duty, as an issuer of securities in a transaction for the purchase or sale of securities, to provide Plaintiff[s] with information that was neither false nor misleading as to any material facts, and a duty not to omit material facts whose omission would cause certain statements made to be false and misleading." (FAC ¶ 103.)  Further, Franey had a duty to verify the information that CodeSmart and Shapiro provided, which she breached by negligently allowing the company to issue the PPM with its false statements and omissions of material fact.  (Id. ¶¶ 104–10.)

To state a cause of action for negligent misrepresentation, "a plaintiff must show '(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014).  Where a negligent misrepresentation claim sounds in fraud, courts generally require that the claim satisfy the heightened pleading requirements of Rule 9(b). See PetEdge, Inc. v. Garg, 234 F. Supp. 3d 477, 496 (S.D.N.Y. 2017) ("A claim for negligent misrepresentation 'must be pled in accordance with the specificity criteria of Rule 9(b).'"); see

also Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.,
--- F. Supp. 3d ---, No. 18 Civ. 8152 (JFK), 2019 WL 5595042, at
*12 (S.D.N.Y. Oct. 30, 2019).  However, "[i]f it were shown that
the facts were peculiarly within the possession and control of
the opposing party, then it is true that [a plaintiff] could
plead facts 'upon information and belief.'  But even then, 'the
plaintiff still bears the burden of alleging facts upon which
her or his belief is founded.'" Pilkington, 2019 WL 5595042, at
*12 (quoting Riker v. Premier Capital, LLC, No. 15 Civ. 8293
(ALC), 2016 WL 5334980, at *6 (S.D.N.Y. Sept. 22, 2016)).

Defendants argue that the FAC's negligent misrepresentation
claim fails to satisfy Rules 12(b)(6) and 9(b).  The Court
agrees.

First, the FAC does not sufficiently plead any sort of
special or privity-like relationship between Franey and
Plaintiffs.  Here, the FAC merely asserts one wholly conclusory
allegation that "Franey and [Plaintiffs] were in a special
relationship with regard to the stock purchases made pursuant to
the PPM."  (FAC ¶ 105.)  Aside from this lone allegation,
Plaintiffs do not offer any facts to plausibly suggest that
there was any type of relationship, special or otherwise,
actually between themselves and Franey.  Indeed, even between
Plaintiffs and CodeSmart the claim would fail because a special
relationship "must be different from the arms-length, business

relationship the parties had." Toledo Fund, LLC v. HSBC Bank
USA, Nat. Ass'n, No. 11 Civ. 7686 (KBF), 2012 WL 364045, at *6
(S.D.N.Y. Feb. 3, 2012) (citing Busino v. Meachem, 270 A.D.2d
606, 608 (3d Dep't 2000) ("A 'special relationship' requires a
closer degree of trust than an ordinary business
relationship.")). "The use of the merely conclusory allegation
that such a relationship existed is insufficient as a matter of
law." Id.

Second, even if the Court could credit Plaintiffs'
conclusory assertion that a special relationship existed because
of the PPM—which the Court cannot do, see Iqbal, 556 U.S. at 678
(citing Twombly, 550 U.S. at 555) ("Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice.")—Plaintiffs nonetheless have failed
to sufficiently allege how the PPM's purportedly false and
misleading statements were inaccurate. With the exception of
the PPM's failure to include "key facts" regarding CodeSmart's
financial condition, (FAC ¶ 36), every other statement that
Plaintiffs identify as false is only alleged to be so "upon
information and belief," (id. ¶¶ 22-23, 25-26, 28, 30, 32). The
FAC, however, does not set forth any factual basis for any of
these alleged information and beliefs. Accordingly, these
factual assertions fail to meet the heightened pleading
requirements of Rule 9(b). See Pilkington, 2019 WL 5595042, at

14

*13 (dismissing negligent misrepresentation claims where the complaint failed to offer sufficient facts even on "information and belief"); Riker, 2016 WL 5334980, at *6 (same).  Plaintiffs' remaining allegation regarding the omission of "key" financial information also fails because, although they allege new facts that should have been included in the PPM, Plaintiffs do not contrast the new facts with the purported misleading facts in the PPM or otherwise explain how the omitted facts were necessary to make the PPM not false or misleading.

Finally, Plaintiffs' reliance on Franey's position as COO, co-founder, and member of CodeSmart's Board of Directors is not sufficient, on its own, to plausibly plead a special relationship between Franey and Plaintiffs, or to automatically attribute the PPM's purportedly false statements to her as an individual.  "The group pleading doctrine permits a court to presume, at the motion-to-dismiss stage, that 'group-published' documents such as 'statements in prospectuses, registration statements, annual reports, [and] press releases' are attributable to 'individuals with direct involvement in the everyday business of the company.'" DeAngelis v. Corzine, 17 F. Supp. 3d 270, 281 (S.D.N.Y. 2014) (quoting In re BISYS Sec. Litig., 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005)).  Although some courts have ruled that written, group-published statements may be attributable to a "corporate insider" by virtue of her

15

high-level position, see In re BISYS, 397 F. Supp. 2d at 441, an individual's title does not mechanically establish a special relationship between that corporate insider and an outside entity. Further, the group-pleading doctrine generally requires non-conclusory allegations that give rise to the inference that the individual defendant was involved in the development of the misleading document—allegations which are conspicuously absent from the FAC. See, e.g., Levy v. Maggiore, 48 F. Supp. 3d 428, 451 (E.D.N.Y. 2014) ("Absent any factual allegations with respect to [the defendant], other than his title, the group pleading doctrine does not encompass [him]."); DeAngelis, 17 F. Supp. 3d at 281-82 ("In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible.") (quoting In re DDAVP Direct Purchaser Antitrust Litig., 585 F.3d 677, 695 (2d Cir. 2009)). Indeed, Plaintiffs' assertion that Shapiro conducted the business out of his home in New York, while Franey conducted the business out of her home in Pennsylvania, (FAC ¶ 11), cuts against the inference that Franey would have automatically known of Shapiro's misconduct and false statements even under a solely "corporate insider" theory of liability.

Accordingly, Count I must be dismissed.

## B. Aiding and Abetting Fraud

The FAC next alleges that Franey knew, or was reckless in not knowing, that Shapiro engaged in a fraudulent scheme to manipulate CodeSmart's share price and deceive Plaintiffs into purchasing its fraudulently inflated stock, and that she provided substantial assistance to the scheme in her capacity as COO and CodeSmart board member. (FAC ¶¶ 114–117, 119.)

"To state a claim for aiding and abetting fraud, Plaintiffs must allege '(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud.'" HSH Nordbank AG v. RBS Holdings USA Inc., No. 13 Civ. 3303 (PGG), 2015 WL 1307189, at *15 (S.D.N.Y. Mar. 23, 2015) (quoting Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co., 64 A.D.3d 472, 476 (1st Dep't 2009)). "A plaintiff alleging aiding and abetting claims sounding in fraud must also plead the elements of aiding and abetting with particularity." Berman v. Morgan Keegan & Co., No. 10 Civ. 5866 (PKC), 2011 WL 1002683, at *7 (S.D.N.Y. Mar. 14, 2011), aff'd, 455 F. App'x 92 (2d Cir. 2012). Although actual knowledge may be alleged generally at the pre-discovery stage where fraudulent intent is inferable from the surrounding circumstances, HSH Nordbank, 2015 WL 1307189, at *16, "[m]ere allegations of constructive knowledge or recklessness are

17

insufficient to satisfy the knowledge requirement," <u>Berman</u>, 2011 WL 1002683, at *10 (internal quotation marks omitted). "Substantial assistance exists where '(1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.'" <u>Id.</u> (quoting <u>UniCredito Italiano SPA v. JPMorgan Chase Bank</u>, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003)).

Defendants argue that the FAC's aiding and abetting claim fails to meet the pleading requirements of Rules 12(b)(6) and 9(b) because Plaintiffs have failed to plead with the requisite particularity an underlying fraud cause of action, Franey's knowledge of the fraud, and her substantial assistance to Shapiro. The Court agrees.

### 1. Underlying Fraud

Under New York law, a fraud claim requires: "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." <u>Premium Mortg. Corp. v. Equifax, Inc.</u>, 583 F.3d 103, 108 (2d Cir. 2009) (quotation marks omitted). As discussed above, the FAC's allegations regarding

18

the PPM fail under Rule 9(b).  Turning to the other false
statements that Plaintiffs allege—i.e., the press releases,
Forbes article, SEC filings, and statements by Shapiro—the Court
finds that these purported misrepresentations also fail to
satisfy Rule 9(b) for substantially the same reasons.
Accordingly, Plaintiffs have failed to plead the first element
of a claim for aiding and abetting fraud, and Count II must be
dismissed.

First, as with the PPM, Plaintiffs' allegations relating to
the false press releases and Forbes article do not satisfy Rule
9(b) because Plaintiffs do not set forth any factual basis for
their assertions of falsity, which are only made "upon
information and belief." See Pilkington, 2019 WL 5595042, at
*13; Riker, 2016 WL 5334980, at *6.

Next, the SEC filings and statements by Shapiro to
potential investors fail under Rule 12(b)(6) because the
purportedly false statements are in fact forward-looking
predictions, not material misrepresentations of a presently
existing or past fact.  Predictive, forward-looking statements,
standing alone, are not actionable. See Hydro Inv'rs, Inc. v.
Trafalgar Power Inc., 227 F.3d 8, 20-21 (2d Cir. 2000) ("[T]he
alleged misrepresentation must be factual in nature and not
promissory or relating to future events that might never come to
fruition."); see also HDtracks.com, LLC v. 7digital Grp. PLC,

No. 18 Civ. 5823 (JFK), 2019 WL 6170838, at *10 (S.D.N.Y. Nov.
19, 2019) (dismissing fraudulent inducement claim that was
premised on forward-looking predictions); <u>Matsumura v. Benihana</u>
<u>Nat. Corp.</u>, 542 F. Supp. 2d 245, 252 (S.D.N.Y. 2008) (dismissing
complaint where the plaintiff failed to plead specific facts to
support their assertion that the defendants' intentions negated
the truth of their forward-looking statements).

## 2. Knowledge and Substantial Assistance

Assuming <u>arguendo</u> that Shapiro's guilty plea conviction
plausibly alleges the existence of an underlying fraud that
Franey then aided and abetted—which in itself is doubtful
because Franey was not indicted as a co-conspirator—the FAC's
purely conclusory allegations of her misconduct do not give rise
to an inference, much less a plausible one, that Franey had
knowledge of Shapiro's fraud or that she affirmatively assisted,
helped conceal, or enabled it to proceed.  Indeed, the FAC's
utter lack of specifics with respect to actions <u>by Franey</u> is the
fundamental flaw with Plaintiffs' entire pleading: the only non-
conclusory allegation that they assert with respect to Franey is
that neither she, nor CodeSmart or Shapiro filed a registration
statement with the SEC as they were contractually obligated to
do under the terms of the subscription agreements.  (FAC ¶¶ 69,
71.)  Every other allegation concerning Franey, for example that
she "provided substantial assistance to Shapiro by approving and

20

making false and misleading statements to shareholders as an executive officer and board member of CodeSmart," is nothing more than an impermissible legal conclusion couched as a factual assertion—Plaintiffs do not allege anything that, on its own, gives rise to an inference of wrongdoing by Franey, to say nothing of Rule 9(b)'s heightened pleading requirement.[2] See ATSI Commc'ns, 493 F.3d at 99 ("Allegations that are conclusory or unsupported by factual assertions are insufficient."); see also Inspired Capital, LLC v. Condé Nast, --- F. App'x ---, No. 19-2057-CV, 2020 WL 704856, at *3 (2d Cir. Feb. 12, 2020) (summary order) ("We have repeatedly explained that Rule 9(b)'s heightened pleading requirement 'serves to provide a defendant with fair notice of a plaintiff's claim, safeguard h[er] reputation from improvident charges of wrongdoing, and protect h[er] against strike suits.'").

Accordingly, Plaintiffs' direct claims against Franey must be dismissed for failure to state a claim upon which relief may be granted.

### C. Derivative Claims

On behalf of CodeSmart, Plaintiffs assert two derivative claims against Franey alleging that she breached fiduciary

---

[2] Indeed, Rule 9(b) requires Plaintiffs to set forth the "what, when, where, and how" of Franey's alleged failure to stop Shapiro's fraud or her affirmative assistance to him. See Pilkington, 2019 WL 5595042, at *15; Minnie Rose LLC v. Yu, 169 F. Supp. 3d 504, 511 (S.D.N.Y. 2016).

duties she owed to CodeSmart, and she aided and abetted

Shapiro's breach of fiduciary duties that he owed to the

company. Defendants move to dismiss the derivative claims by

arguing that an impermissible conflict of interest arises when

such claims are comingled with direct claims, and that the FAC

fails to adequately plead demand futility or to satisfy the

heightened pleading standards that apply to claims brought

against a company officer. Because the Court finds that the

FAC's derivative claims fail for substantially the same reasons

as its direct claims, the Court does not address Defendants'

conflict of interest, demand futility, or <u>Caremark</u> defenses at

this time.

### 1. Choice of Law

As a preliminary matter, Defendants assert that Florida law

governs Plaintiffs' derivative claims because Florida is

CodeSmart's state of incorporation. (Defs.' Mem. of Law in

Supp. Mot. to Dismiss, ECF No. 76, at 7 n.4; FAC ¶ 13.)

Plaintiffs do not contest this and they also cite Florida case

law in their opposition brief. Accordingly, the Court applies

Florida law to Plaintiffs' derivative claims. See <u>Steinberg ex</u>

<u>rel. Bank of Am. Corp. v. Mozilo</u>, 135 F. Supp. 3d 178, 182

(S.D.N.Y. 2015) ("In a diversity action, a federal court applies

the choice of law rules of the forum state. New York law looks

to the law of the state of incorporation in adjudicating a

corporation's 'internal affairs,' including a shareholder derivative action.") (citations, internal quotation marks, and ellipsis omitted); see also Galef v. Alexander, 615 F.2d 51, 58 (2d Cir. 1980).

## 2. Breach of Fiduciary Duty

Under Florida law, "[t]he elements of a cause of action for breach of fiduciary duty are: (1) the existence of a duty; (2) breach of that duty; and (3) damages flowing from the breach." Lee Mem'l Health Sys. v. Blue Cross & Blue Shield of Fla., Inc., 248 F. Supp. 3d 1304, 1316 (M.D. Fla. 2017) (citing Cassedy v. Alland Inv. Corp., 128 So.3d 976, 978 (Fla. 1st Dist. Ct. App. 2014)). Where a claim sounds in fraud, "courts have consistently found that Rule 9(b) is also applicable," even "to torts that are not even necessarily fraudulent—such as a breach of fiduciary duty—as long as their underlying factual allegations include averments of fraud." Ctr. for Individual Rights v. Chevaldina, No. 16 Civ. 20905 (EGT), 2018 WL 1795470, at *7 (S.D. Fla. Feb. 21, 2018) (collecting cases), report and recommendation adopted, No. 16 Civ. 20905 (JLK), 2018 WL 3687559 (S.D. Fla. May 24, 2018). "The failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." U.S., ex rel., Shurick v. Boeing Co., 330 F. App'x 781, 783 (11th Cir. 2009) (per curiam).

Plaintiffs' derivative claim for breach of fiduciary duty must be dismissed for failure to plead the claim with the requisite particularity. First, as discussed above, the FAC utterly fails to allege sufficient, non-conclusory facts regarding (1) Franey's purported wrongful conduct, and (2) the false statements that she and Shapiro are summarily alleged to have communicated to outside investors via the PPM, press releases, and other statements. The FAC is replete with assertions such as "Franey did not act in good faith and acted with gross negligence and with complete disregard of her obligation to use due care and employ reasonable and prudent investment standards," but it does not offer <u>any</u> factual allegations that, standing alone, would support or give rise to such a conclusion by, for example, articulating <u>how</u> Franey did not act in good faith, or <u>where and when</u> she disregarded her obligation to use due care. <u>See</u> <u>In re Takata Airbag Prod. Liab. Litig.</u>, 396 F. Supp. 3d 1101, 1159 (S.D. Fla. 2019) ("[T]he plaintiff must allege particular facts with respect to each defendant's participation in the fraud. In other words, a plaintiff is required to set forth specific allegations as to each defendant that will fulfill the 'who, what, when, where, and how' pertaining to the underlying fraud. At bottom, the purpose of the particularity rule is to alert defendants to

their precise misconduct and protect them against baseless charges of fraudulent behavior.") (citations omitted).

Second, Plaintiffs' lone assertion that neither Franey, CodeSmart, nor Shapiro filed a registration statement with the SEC, (FAC ¶¶ 69, 71, 131), is not sufficient to establish a derivative breach of fiduciary duty claim where the FAC also fails to allege how any such breach caused damages to CodeSmart. See Schein v. Chasen, 313 So.2d 739, 746 (Fla. 1975) ("[A]ctual damage to the corporation must be alleged in the complaint to substantiate a stockholders' derivative action."). Plaintiffs argue that their allegations of damages encompass harm suffered by CodeSmart because the company is "named nominally." (Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. 77, at 9–10.) This argument, however, does not hold up where the only actual injury alleged in all 142 paragraphs is the $2.1 million loss that Plaintiffs suffered when their CodeSmart shares became worthless. (FAC ¶¶ 3, 49–64.) Indeed, with respect to the one plausible allegation of breach—i.e., Franey's failure to file a registration statement—the only damages flowing from the purported misconduct are alleged to be suffered by ICD alone. (FAC ¶¶ 71–73 (stating the failure to timely file an effective registration statement "caused substantial damage to ICD"

because "ICD Capital was not able to transfer or sell its shares on a public market and thereby mitigate its losses").)

Accordingly, Count III must be dismissed.

### 3. Aiding and Abetting Shapiro's Breach of Fiduciary Duty

"Under Florida law, the elements of a claim for aiding and abetting breach of fiduciary duty are: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of that duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) substantial assistance or encouragement of the wrongdoing by the alleged aider and abettor." Am. Axess Inc. v. Ochoa, No. 18 Civ. 360 (GAP), 2018 WL 2197693, at *2 (M.D. Fla. May 14, 2018).

> In order for a claim of aiding and abetting to survive a motion to dismiss, the plaintiff must allege that the defendant had actual knowledge of the underlying wrongdoing. While the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud. Conclusory statements that a defendant actually knew are insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant should have known that something was amiss.

Lamm v. State St. Bank & Tr. Co., 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012) (citations, quotation marks, and brackets omitted), aff'd, 749 F.3d 938 (11th Cir. 2014).

As discussed above, the FAC's purely conclusory allegations fail to plausibly allege that Franey had knowledge of Shapiro's

misconduct or that she affirmatively assisted or encouraged his wrongdoing. Accordingly, Plaintiffs' derivative claim for aiding and abetting breach of fiduciary duty, Count IV, must be dismissed.

### D. Claims Against CodeSmart

Having dismissed Plaintiffs' derivative claims in their entirety, the Court also must dismiss the FAC in its entirety as to nominal defendant CodeSmart because Plaintiffs do not bring any direct claims against the company and no derivative causes of action survive. See, e.g., Kramer v. Miller, No. 94 Civ. 3439 (JFK), 1995 WL 699794, at *4 (S.D.N.Y. Nov. 24, 1995).

### IV. Leave to Amend

Plaintiffs have not sought, nor requested, leave to amend. In view of their woefully inadequate first attempt to bring suit against Franey, the Court does not envision any purpose to be served by offering Plaintiffs the opportunity to amend the FAC. Nevertheless, in the Second Circuit "plaintiffs must be allowed an opportunity to amend to remedy deficiencies under Rule 9(b)." Luce v. Edelstein, 802 F.2d 49, 57 (2d Cir. 1986); see also Pilkington, 2019 WL 5595042, at *21. Although Federal Rule of Civil Procedure 15 instructs courts to "freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), "amendment is not warranted absent some indication as to what [Plaintiffs] might add to their complaint in order to make it

27

viable," Shemian v. Research In Motion Ltd., 570 F. App'x 32, 37
(2d Cir. 2014) (summary order) (quoting Horoshko v. Citibank,
N.A., 373 F.3d 248, 249 (2d Cir. 2004) (per curiam)).
Accordingly, should Plaintiffs wish to amend the FAC to salvage
their questionable claims against Franey, they must demonstrate
how they will cure their pleading deficiencies by filing (1) a
proposed second amended complaint ("the PSAC") with a redline
comparing the PSAC to the FAC; and (2) a memorandum of law
explaining how the PSAC would survive a comparable motion to
dismiss brought by Defendants, and how justice requires granting
leave to amend where Plaintiffs are likely entitled to full
recovery in the criminal action against Shapiro pursuant to the
Mandatory Victims Restitution Act, 18 U.S.C. §§ 3663A,
3664(f)(1)(A), see Discala, 14 Cr. 399 (ENV) (E.D.N.Y. Jan. 4,
2019), Dkt. No. 691 (imposing an approximately $2.33 million
award of restitution against one of Shapiro's co-conspirators
who, like Shapiro, pleaded guilty to one count of conspiracy to
commit securities fraud).  Such demonstration shall be filed
within 30 days of the date of this Opinion & Order.  Defendants'
opposition brief, if any, is due no later than 14 days after
Plaintiffs' motion is filed; Plaintiffs' reply brief, if any, is
due no later than seven days after Defendants' opposition.

**V.  Conclusion**

For the reasons stated above, Defendants' motion to dismiss the amended complaint is GRANTED.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 74.

**SO ORDERED.**

Dated:  New York, New York
         February 19, 2020

_John F. Keenan_
                           John F. Keenan
                 United States District Judge