UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
ICD CAPITAL, LLC, individually   :
and derivatively on behalf of    :
nominal defendant CodeSmart      :
Holdings, Inc.,                   :
                                  :
              Plaintiff,          :
                                  :
    -against-                     :
                                  :
CODESMART HOLDINGS, INC. and      :
SHARON FRANEY,                    :
                                  :
              Defendants.         :
------------------------------ X

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #: _____           │
│ DATE FILED: _07/13/2020_____      │
└──────────────────────────────────┘
```

No. 14 Civ. 8355 (JFK)

**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFF ICD CAPITAL, LLC:
     Joseph M. Pastore III
     PASTORE & DAILEY LLC

FOR DEFENDANTS CODESMART HOLDINGS, INC. and SHARON FRANEY:
     Sameer Rastogi
     Thomas P. McEvoy
     SICHENZIA ROSS FERENCE LLP

**JOHN F. KEENAN, United States District Judge:**

Plaintiff ICD Capital, LLC ("ICD"), a Texas investment company, brings a motion for leave to file a second amended complaint ("the SAC") following the Court's February 19, 2020 Opinion & Order ("the MTD Order") that dismissed without prejudice ICD's first amended complaint ("the FAC") against Defendants CodeSmart Holdings, Inc. ("CodeSmart"), a Florida medical insurance coding education and training company, and Sharon Franey ("Franey"), a co-founder of CodeSmart and one of its two executive officers and board members. For the reasons

set forth below, ICD's motion is DENIED, its claims are dismissed with prejudice, and this case is closed.

## I.  Background

The Court presumes familiarity with ICD's first attempt to bring suit against CodeSmart and Franey as discussed in the MTD Order. See ICD Capital, LLC v. CodeSmart Holdings, Inc., No. 14 Civ. 8355 (JFK), 2020 WL 815733 (S.D.N.Y. Feb. 19, 2020).  To briefly summarize, ICD brings this action individually, derivatively, and on behalf of other aggrieved parties (together with ICD, "Plaintiffs") against CodeSmart and Franey for negligent misrepresentation, breach of fiduciary duties, and aiding and abetting fraud.  Plaintiffs allege that they purchased approximately $2.1 million worth of CodeSmart securities in reliance on materially false and misleading statements the company provided in a private placement memorandum dated June 17, 2013 ("the PPM"), certain of the company's press releases and filings with the U.S. Securities and Exchange Commission ("the SEC"), and public and private statements by non-party Ira Shapiro ("Shapiro").  Shapiro is CodeSmart's former Chief Executive Officer ("CEO"), Chairman of its Board of Directors ("Chairman"), and, along with Franey, the company's other co-founder.  In October 2017, Shapiro pleaded guilty in the Eastern District of New York to conspiracy to commit securities fraud for conduct related to Plaintiffs'

claims in this action; Shapiro's sentencing has been adjourned
<u>sine die</u> because of the COVID-19 pandemic. <u>See</u> <u>United States v.</u>
<u>Discala, et al.</u>, 14 Cr. 399 (ENV) (E.D.N.Y.). Franey and
Shapiro founded CodeSmart together, they were the company's only
officers and board members, and they conducted the business out
of their homes in Pennsylvania and New York, respectively.

The SAC asserts two direct claims against Franey for
negligent misrepresentation and aiding and abetting fraud, and
two derivative claims against her, brought by Plaintiffs on
behalf of CodeSmart, for breach of fiduciary duties that she
owed to the company and aiding and abetting Shapiro's breach of
similar fiduciary duties. The SAC adds some new facts to
Plaintiffs' original allegations, but the claims are, in
essence, substantially the same as the FAC. Plaintiffs argue
that justice requires granting them leave to amend because
Plaintiffs believe that Shapiro is likely indigent and they will
not receive adequate repayment from him in the criminal action
pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. §§
3663A, 3664(f)(1)(A), and because Franey is likely covered by
Directors and Officers insurance.

### A. Factual Allegations

The following is drawn from Plaintiffs' proposed SAC.
(Proposed Second Am. Compl. ("SAC"), ECF No. 85.) For the
purposes of this motion, all of the SAC's non-conclusory factual

allegations are accepted as true and all reasonable inferences are drawn in Plaintiffs' favor. <u>Lynch v. City of New York</u>, 952 F.3d 67, 74–76 (2d Cir. 2020).

Plaintiffs allege that, as the Chief Operating Officer ("COO") of CodeSmart and its only other board member, Franey "knew or should have known" that the following statements were materially false or misleading because Franey had extensive business experience prior to joining CodeSmart, she devoted "100% of her work time to the company," and she had access to information about the company and its finances and the responsibility to confirm the accuracy of information that CodeSmart disseminated to potential investors.

**The PPM.**  In 2013, CodeSmart attempted to raise approximately $4 million by means of a private investment in a public entity transaction ("the PIPE").  (SAC ¶¶ 16, 18.)  To facilitate the PIPE, CodeSmart drafted and disseminated the PPM to interested investors to provide them with information about the company.  (<u>Id.</u> ¶ 17.)  Plaintiffs allege that the PPM included the following false statements, which Franey knew or should have known were false: (1) CodeSmart had entered into several consulting agreements and had established extensive relationships with strategic partners around the country; (2) CodeSmart had distribution arrangements with major companies which gave CodeSmart widespread reach and immediate access to

hundreds of thousands of potential students; (3) CodeSmart had entered into a long-term agreement with one of the country's largest hospital group purchasing organizations; (4) CodeSmart had been endorsed by two regional extension centers in Florida; and (5) CodeSmart provided consulting services.  (Id. ¶¶ 21-35.) As in the FAC, however, Plaintiffs once again assert "upon information and belief" that each of these factual statements were false.  Plaintiffs also once again allege that the PPM omitted "key facts" and did not accurately present the company's financial condition, which Franey knew or should have known. (Id. ¶¶ 36-38.)

**May 2013 press release.**  On May 28, 2013, CodeSmart issued a press release stating that the company was the "exclusive strategic partner" to Binghamton University for certain medical coding education and consulting services relating to "ICD-10," an industry classification system that was to become effective in October 2014.  (Id. ¶¶ 14, 40.)  Plaintiffs allege, "based on conversations and email communications with representatives of Binghamton University," that the press release was false because CodeSmart's agreement with Binghamton University was not an exclusive relationship.  (Id. ¶¶ 41-45.)

**June 2013 press release.**  On June 4, 2013, CodeSmart issued a press release stating that the company was "the exclusive strategic partner for ICD-10 education and consulting services

to Ramapo College." (Id. ¶ 50.) Plaintiffs allege that this statement was false, and that Franey knew that Ramapo College had not finalized such an agreement with CodeSmart at that time, because on the same day the press release was issued, an individual at Ramapo College emailed representatives of CodeSmart, including Franey, to complain about the unauthorized press release. (Id. ¶¶ 51–53.) Plaintiffs further allege that the individual stated that she was "very concerned" about the press release and said, "as you know, we are not yet approved . . . to proceed with a contract for this program." (Id. ¶ 53.) The individual requested that CodeSmart "halt any further communications/promotions about a partnership with Ramapo College." (Id.)

The SAC alleges that Franey responded to the individual and apologized for the press release stating, "Ruth Patterson and I [Franey] were not aware that this was to be released" and "no further releases mentioning Ramapo will be issued without your consent." (Id. ¶ 54.) Shapiro also responded to the individual and apologized for the press release stating, "this is all done in the spirit of promoting business opportunities for you as a partner." (Id. ¶ 56.) Neither Franey, Shapiro, nor CodeSmart ever issued a revised or amended press release regarding the company's relationship with Ramapo College. (Id. ¶ 59.) Plaintiffs allege, however, only "upon information and belief"

6

that CodeSmart never finalized a contract with Ramapo College.
(Id. ¶ 55.)

**Forbes article.**  On June 25, 2013, Forbes published an
article in which Shapiro stated that CodeSmart had affiliations
with more than 60 colleges and universities and it had signed an
exclusive agreement with one of the largest hospital groups in
the country.  (Id. ¶ 62.)  Plaintiffs allege that CodeSmart did
not have affiliations with the colleges and universities, and
they once again assert "upon information and belief" that
CodeSmart did not have an exclusive agreement with the hospital
group.  (Id. ¶¶ 63, 66.)

**SEC filings.**  On July 3, 2013, CodeSmart filed a Form 8-K
with the SEC stating that Shapiro, in his capacity as
CodeSmart's CEO and Chairman, presented at an online investor
conference and projected that CodeSmart's gross revenue and net
income would increase dramatically over the following three
years.  (Id. ¶ 67.)  Nine days later, CodeSmart filed an amended
Form 8-K in which the company estimated that it would earn
approximately $10 million in revenues over the next 12 months.
(Id. ¶ 68.)

**Private statements by Shapiro.**  Finally, in or around mid-
July 2013, Shapiro told two potential PIPE investors, one of
whom was a member of ICD, that CodeSmart's stock was doing

"great," and it would likely double and split again "very soon."
(Id. ¶ 71.)

Relying on these representations, Plaintiffs executed
subscription agreements to purchase CodeSmart's common stock at
$1.50 per share.  (Id. ¶ 73.)  The shares were sold as
"restricted securities," which meant that they could not be
resold or transferred by Plaintiffs until the shares were
registered for sale with the SEC or covered by an exemption.
(Id. ¶ 90.)  Accordingly, the subscription agreements obligated
CodeSmart to file a registration statement and to ensure that it
was declared effective.  (Id. ¶¶ 92-96.)  However, neither
CodeSmart, Shapiro, nor Franey complied with the requirement,
which caused CodeSmart to breach its contractual obligations to
Plaintiffs.  (Id.)  As a result, Plaintiffs were not able to
transfer or sell their shares on a public market to mitigate
their losses, and Plaintiffs' approximately $2.1 million
investment became worthless when the stock price sank from a
high of $6.94 per share in July 2013, to $0.01 per share the
following year.  (Id. ¶¶ 69, 97-100.)  The SEC ultimately
suspended trading in CodeSmart stock in 2015 and revoked its
registration in 2016.  (Id. ¶¶ 101-02.)  Plaintiffs allege that,
at the time they purchased their shares, Franey's ownership
interest was valued at over $20 million.  (Id. ¶ 15.)

### B.  Procedural Background

Plaintiffs initiated this action in October 2014, by filing a complaint against CodeSmart, Franey, and Shapiro.  (ECF No. 1.)  The following year, the Court stayed these proceedings until final disposition of the criminal action against Shapiro and related investigations into CodeSmart and Franey.  (ECF No. 39.)  Franey was never indicted, and on January 29, 2019, she and CodeSmart consented to lifting the stay and reinstating this case.  (ECF No. 68.)

On February 4, 2019, Plaintiffs filed the FAC, which removed Shapiro as a defendant and asserted direct and derivative claims against Franey.  (ECF No. 71.)  On April 19, 2019, CodeSmart and Franey (together, "Defendants") moved to dismiss the FAC for failure to state a claim upon which relief may be granted.  (ECF No. 74.)  The Court granted Defendants' motion on February 19, 2020, (ECF No. 80), but allowed Plaintiffs the opportunity to cure "their woefully inadequate first attempt to bring suit against Franey" by demonstrating how a second amended complaint "would survive a comparable motion to dismiss brought by Defendants." ICD Capital, 2020 WL 815733, at *9.  On March 20, 2020, Plaintiffs filed the instant motion, (ECF Nos. 83–85), which was heard during a telephonic argument on July 1, 2020.

## II.   Legal Standards Governing Motions Under Rules 12(b)(6) and 9(b)

Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2); Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).  "Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y. 1996) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente, 310 F.3d at 258.  "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015).

"[I]n deciding a Rule 12(b)(6) motion to dismiss a complaint, [the Court] is required to accept all 'well-pleaded factual allegations' in the complaint as true." Lynch, 952 F.3d at 74–75 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). The Court, however, may not credit "'naked assertions' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (brackets omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

557 (2007)), nor "conclusory allegations or legal conclusions couched as factual allegations," Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013). "Although allegations that are conclusory are not entitled to be assumed true, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Lynch, 952 F.3d at 75 (alterations, citations, and internal quotation marks omitted). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." Id. (quoting Twombly, 550 U.S. at 556).

In addition to the requirements of Rule 12(b)(6), a complaint alleging fraud must satisfy the heightened pleading requirements of Rule 9(b) by stating the circumstances constituting fraud "with particularity." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 174 (2d Cir. 2015). "Rule 9(b)'s heightened particularity requirement does not apply to allegations regarding fraudulent intent, also known as scienter, which may be alleged generally." Minnie Rose LLC v. Yu, 169 F. Supp. 3d 504, 511 (S.D.N.Y. 2016). Plaintiffs, however, "are still required to plead the factual basis which

11

gives rise to a 'strong inference' of fraudulent intent."
Stephenson v. PricewaterhouseCoopers, LLP, 482 F. App'x 618, 622
(2d Cir. 2012) (summary order) (emphasis omitted) (quoting
Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir.
1990)).  "An inference is 'strong' if it is 'cogent and at least
as compelling as any opposing inference one could draw from the
facts alleged.'" Loreley Fin., 797 F.3d at 176-77 (quoting
Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324
(2007)).

**III.  Discussion**

As a preliminary matter, it is worth noting that
Plaintiffs' claims once again suffer from the following two
significant deficiencies, which the MTD Order previously
identified and discussed at length.

First, Plaintiffs continue to assert "upon information and
belief" that certain statements were false or misleading.  The
MTD Order explained that Plaintiffs may allege such facts in
this manner, but the heightened pleading requirements of Rule
9(b) require that Plaintiffs set forth the factual basis for
their "information and belief." See ICD Capital, 2020 WL 815733,
at *4-5, *7.  The SAC, however, fails to articulate a factual
basis for any of Plaintiffs' "upon information and belief"
allegations, and the Court, once again, will not treat them as
true.

Second, the SAC is once again riddled with conclusory allegations relating to Franey's conduct and her awareness of, or involvement in, the false and misleading statements allegedly issued by CodeSmart and Shapiro.  The MTD Order pointedly explained that such allegations are insufficient.  See id. at *7 (finding "the FAC's utter lack of specifics with respect to actions by Franey is the fundamental flaw with Plaintiffs' entire pleading," and "Plaintiffs do not allege anything that, on its own, gives rise to an inference of wrongdoing by Franey, to say nothing of Rule 9(b)'s heightened pleading requirement") (emphasis in original).  As discussed below, the SAC only adds one new, non-conclusory allegation against Franey:  Regarding the June 2013 press release, Plaintiffs now allege that Franey received and responded to an email from Ramapo College that voiced concern about the accuracy of CodeSmart's June 4, 2013 press release, but Franey personally took no action in response.  (SAC ¶¶ 50-59.)  Although this gives rise to the inference that Franey was put on notice that the press release contained a false statement, the allegation of wrongful conduct by Franey— i.e., that she failed to issue a corrective press release—relies on Plaintiffs' unsupported and speculative assertion that, "upon information and belief," CodeSmart never finalized a contract with Ramapo College.  (Id. ¶ 55.)

13

## A. Negligent Misrepresentation

To state a cause of action for negligent misrepresentation, "a plaintiff must show '(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014). Where a negligent misrepresentation claim sounds in fraud, courts generally require that the claim satisfy the heightened pleading requirements of Rule 9(b). See PetEdge, Inc. v. Garg, 234 F. Supp. 3d 477, 496 (S.D.N.Y. 2017) ("A claim for negligent misrepresentation 'must be pled in accordance with the specificity criteria of Rule 9(b).'"); see also Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am., 420 F. Supp. 3d 123, 141–42 (S.D.N.Y. 2019). However, "[i]f it were shown that the facts were peculiarly within the possession and control of the opposing party, then it is true that [a plaintiff] could plead facts 'upon information and belief.' But even then, 'the plaintiff still bears the burden of alleging facts upon which her or his belief is founded.'" Pilkington, 420 F. Supp. 3d at 142 (quoting Riker v. Premier Capital, LLC, No. 15 Civ. 8293 (ALC), 2016 WL 5334980, at *6 (S.D.N.Y. Sept. 22, 2016)).

Plaintiffs argue that a special or privity-like relationship existed between Plaintiffs and Franey based on the nature of Plaintiffs' investment in CodeSmart, Franey's role as an officer and director of the company, and Franey's prior experience in a commercial enterprise that included a global healthcare consulting division.  The Court disagrees.

First, Plaintiffs did not even argue in their opening brief that the SAC's negligent misrepresentation claim is now sufficiently pleaded, and they belatedly raise a defense of the claim only in their reply brief.  Second, Plaintiffs cite no authority in support of their argument that Franey's position at CodeSmart, together with her prior experience, somehow establishes a special relationship between her and Plaintiffs. Indeed, unlike Plaintiffs' allegations regarding false statements by Shapiro, Plaintiffs do not allege any communications between themselves and Franey.  Finally, Plaintiffs' conclusory allegations do not overcome the general rule that a special relationship "requires a closer degree of trust than an ordinary business relationship," and that such relationships "must be different from the arms-length, business relationship the parties had." ICD Capital, 2020 WL 815733, at *5 (citing Toledo Fund, LLC v. HSBC Bank USA, Nat. Ass'n, No. 11 Civ. 7686 (KBF), 2012 WL 364045, at *6 (S.D.N.Y. Feb. 3, 2012), and Busino v. Meachem, 270 A.D.2d 606, 608 (3d Dep't 2000)); see

also <u>Naughright v. Weiss</u>, 857 F. Supp. 2d 462, 470–71 (S.D.N.Y. 2012) (explaining that "[t]o allege a special relationship, [a plaintiff] must establish something beyond an ordinary arm's length transaction," and "a fiduciary relationship cannot be formed merely by a plaintiff's subjective decision to repose trust in the defendant"). Accordingly, leave to amend Count I is denied as futile.

## B. Aiding and Abetting Fraud

"To state a claim for aiding and abetting fraud, Plaintiffs must allege '(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud.'" <u>HSH Nordbank AG v. RBS Holdings USA Inc.</u>, No. 13 Civ. 3303 (PGG), 2015 WL 1307189, at *15 (S.D.N.Y. Mar. 23, 2015) (quoting <u>Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.</u>, 64 A.D.3d 472, 476 (1st Dep't 2009)). "A plaintiff alleging aiding and abetting claims sounding in fraud must also plead the elements of aiding and abetting with particularity." <u>Berman v. Morgan Keegan & Co., Inc.</u>, No. 10 Civ. 5866 (PKC), 2011 WL 1002683, at *7 (S.D.N.Y. Mar. 14, 2011), <u>aff'd</u>, 455 F. App'x 92 (2d Cir. 2012). "Plaintiffs must allege a strong inference of actual knowledge or conscious avoidance; reckless disregard will not suffice." <u>Anwar v. Fairfield Greenwich Ltd.</u>, 728 F. Supp. 2d 372, 442

16

(S.D.N.Y. 2010).  "While actual knowledge of the underlying fraud may be averred generally under Rule 9(b), the plaintiff must accompany the general allegation with allegations of specific 'facts giving rise to a strong inference of actual knowledge regarding the underlying fraud.'" Berman, 2011 WL 1002683, at *10 (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 293 (2d Cir. 2006)).

The MTD Order ruled that the FAC's allegations regarding the existence of an underlying fraud failed to satisfy the requirements of Rule 9(b). See ICD Capital, 2020 WL 815733, at *6-7.  Assuming arguendo that Shapiro's guilty plea conviction plausibly established the existence of a fraud that Franey then aided and abetted—which the MTD Order noted was doubtful because Franey was not indicted as a co-conspirator—the Court ruled that the FAC's conclusory allegations of misconduct by Franey "do not give rise to an inference, much less a plausible one, that Franey had knowledge of Shapiro's fraud or that she affirmatively assisted, helped conceal, or enabled it to proceed." Id. at *7.

As discussed above, the SAC adds only one new, non-conclusory allegation regarding Franey: that she was put on notice that the June 2013 press release was inaccurate and she did not issue a corrective statement in response.  Even if this allegation was sufficiently pleaded—which, again, it is not

17

because Plaintiffs do not provide any factual basis for their
"information and belief" that CodeSmart never finalized a
contract with Ramapo College, and hence, that a corrective
statement was necessary—Plaintiffs' allegations concerning
Franey still fail to satisfy the knowledge and substantial
assistance pleading requirements for a permissible claim of
aiding and abetting fraud.  Accordingly, leave to amend Count II
is denied as futile.

First, even when construed in the light most favorable to
Plaintiffs, Franey's response to the individual at Ramapo
College—i.e., that she and another "were not aware that [the
announcement] was to be released" and "no further releases
mentioning Ramapo will be issued without [Ramapo's] consent"—
gives rise to the inference that Franey did not intend for the
issuance of a false press release.  This cuts against inferring
Franey's actual knowledge of the underlying fraud. See, e.g.,
Berman, 2011 WL 1002683, at *10-13 (dismissing aiding and
abetting fraud claim where plaintiffs' non-conclusory
allegations were "based upon conjecture and surmise" and "at
most speak to whether [defendant] should have known of the
fraud; they do not reflect actual knowledge of fraud"); see also
In re Agape Litig., 773 F. Supp. 2d 298, 313 (E.D.N.Y. 2011)
("Under Second Circuit case law, [defendant]'s knowledge that
[company] was acting improperly in one capacity does not raise a

18

strong inference that [defendant] had actual knowledge of the underlying fraudulent scheme."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Lynch, 952 F.3d at 74 (quoting Iqbal, 556 U.S. at 679) (emphasis in original). "To present a plausible claim, the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." Id. (quoting Twombly, 550 U.S. at 555) (alterations and internal quotation marks omitted).

Plaintiffs argue that Franey's extensive business experience prior to joining CodeSmart and their allegation that she devoted "100% of her work time to the company" plausibly alleges that she must have known or consciously avoided knowing of Shapiro's fraud. This argument is not persuasive. Aside from the June 2013 press release discussed above, Plaintiffs do not offer any non-conclusory factual assertions regarding Franey's involvement in drafting the relevant issuances, or her awareness that the issuances included materially false or misleading information. As explained in the MTD Order, "[a]llegations that are conclusory or unsupported by factual assertions are insufficient." ICD Capital, 2020 WL 815733, at *7 (citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99

(2d Cir. 2007)); see also Berman, 2011 WL 1002683, at *10
("Allegations that a defendant was reckless in not knowing of
the fraudulent conduct are not sufficient to plead aiding and
abetting fraud with particularity."); cf. Anwar, 728 F. Supp. 2d
at 443 (finding a strong inference of conscious avoidance where
"Plaintiffs allege[d] that [defendants] were aware of the roles
consolidated in [the Ponzi scheme operated by Bernard Madoff],
the lack of transparency into his operations, his family
members' involvement in key positions at his firm, his lack of
segregation of important functions, his use of an unknown
auditing firm, his use of paper trading records, and his
implausibly consistent investment returns").

Second, the SAC's non-conclusory allegations also fail to
demonstrate how Franey substantially assisted Shapiro's fraud.
"Substantial assistance exists where '(1) a defendant
affirmatively assists, helps conceal, or by virtue of failing to
act when required to do so enables the fraud to proceed, and (2)
the actions of the aider/abettor proximately caused the harm on
which the primary liability is predicated.'" Berman, 2011 WL
1002683, at *10 (quoting UniCredito Italiano SPA v. JPMorgan
Chase Bank, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003)).
Regarding Franey's failure to correct the June 2013 press
release—which, as discussed above, merely speculates that such
action was necessary—Plaintiffs' conclusory assertion that

"corrective action would have been a red flag or warning," (SAC ¶¶ 60, 145, 163), is not sufficient, on its own, to allege proximate cause of their decision to purchase CodeSmart securities because the SAC also alleges that CodeSmart issued numerous other press releases during the relevant time period, (id. ¶ 61), and there were numerous other significant and false communications that were issued after the June 2013 press release, such as the PPM and SEC filings.

Likewise, Plaintiffs' other non-conclusory allegation—that neither Franey, CodeSmart, or Shapiro filed a registration statement with the SEC—fails to demonstrate how Franey enabled the fraud to succeed because, as the SAC repeatedly makes clear, the fraud was to induce Plaintiffs to purchase CodeSmart stock via the PIPE.  Franey's failure to file the registration statement after the purchases were complete had nothing to do with whether or not the fraud would succeed.  Indeed, by that point, Plaintiffs allege that it already had.

### C. Derivative Claims

#### 1. Choice of Law

As with the FAC, the parties do not dispute that Florida law governs Plaintiffs' derivative claims against Franey because Florida is CodeSmart's state of incorporation.  Accordingly, the Court once again applies Florida law to its analysis of the sufficiency of Counts III and IV.

Under Florida law, "a district court may properly deny
leave to amend [a] complaint under Rule 15(a) when such
amendment would be futile." Hall v. United Ins. Co. of Am., 367
F.3d 1255, 1262-63 (11th Cir. 2004).  "[D]enial of leave to
amend is justified by futility when the complaint as amended is
still subject to dismissal." Id. (quotation marks omitted).

### 2.   Franey's Breach of Fiduciary Duties Owed to CodeSmart

In Florida, "[t]he elements of a cause of action for breach
of fiduciary duty are: (1) the existence of a duty; (2) breach
of that duty; and (3) damages flowing from the breach." Lee
Mem'l Health Sys. v. Blue Cross & Blue Shield of Fla., Inc., 248
F. Supp. 3d 1304, 1316 (M.D. Fla. 2017) (citing Cassedy v.
Alland Inv. Corp., 128 So. 3d 976, 978 (Fla. 1st Dist. Ct. App.
2014)).  "[A]ctual damage to the corporation must be alleged in
the complaint to substantiate a stockholders' derivative
action." Schein v. Chasen, 313 So. 2d 739, 746 (Fla. 1975).
Where a claim sounds in fraud, "courts have consistently found
that Rule 9(b) is also applicable," even "to torts that are not
even necessarily fraudulent—such as a breach of fiduciary duty—
as long as their underlying factual allegations include
averments of fraud." Ctr. for Individual Rights v. Chevaldina,
No. 16 Civ. 20905 (EGT), 2018 WL 1795470, at *7 (S.D. Fla. Feb.
21, 2018) (collecting cases), report and recommendation adopted,

22

No. 16 Civ. 20905 (JLK), 2018 WL 3687559 (S.D. Fla. May 24,
2018). "The failure to satisfy Rule 9(b) is a ground for
dismissal of a complaint." U.S., ex rel., Shurick v. Boeing Co.,
330 F. App'x 781, 783 (11th Cir. 2009) (per curiam).

The MTD Order dismissed Plaintiffs' breach of fiduciary
duty claim because (1) the FAC failed to allege non-conclusory
and particularized facts regarding breach—i.e., Franey's
purported wrongful conduct—in relation to the false statements
communicated to outside investors; and (2) Plaintiffs' only non-
conclusory allegation regarding a possible breach by Franey—
i.e., her failure to file a registration statement—was only
alleged to have caused damages to Plaintiffs, not CodeSmart. ICD
Capital, 2020 WL 815733, at *8–9.

As before, setting aside Plaintiffs' insufficiently pleaded
allegations, the SAC's remaining non-conclusory assertions once
again do not plausibly allege the damages element of a
permissible derivative cause of action.  Accordingly, leave to
amend Count III is denied as futile.

First, the SAC does not plausibly allege that Franey's
failure to correct the June 2013 press release harmed CodeSmart
by, for example, causing the company to lose customers or to
incur additional expenses.  Plaintiffs argue that CodeSmart's
stock price plummeted to $0.01 because of Franey's failure to
act (and Shapiro's fraud), but Plaintiffs' argument is fatally

undermined by the SAC's other allegations that CodeSmart already was a failing business by July and August 2013, when the company's stock began its freefall.  (SAC ¶ 114 (stating that on July 12, 2013, CodeSmart filed an amended Form 8-K listing only $6,000 in total assets, $7,600 in revenue and a net loss of $103,141); id. ¶ 70 (stating that in August 2013, "CodeSmart file[d] a Form 10-Q with the SEC stating that the company did 'not have sufficient funds to fully implement its business plan' and that if they did not obtain the funds, CodeSmart 'may need to curtail or cease its operations until such time as it has sufficient funds'").)  Instead, the SAC focuses on the harm that Franey's (and Shapiro's) alleged misconduct caused to Plaintiffs—indeed, both derivative counts assert that, "[a]s a result of Franey's actions, Plaintiff[s] [not CodeSmart] suffered damages in an amount to be determined at trial."  (SAC ¶¶ 199, 215.)

Second, as discussed in the MTD Order and above, Plaintiffs are the only entities alleged to have suffered damages as a result of Franey's (and CodeSmart's) failure to file a registration statement. See ICD Capital, 2020 WL 815733, at *9. The SAC adds no new allegations of harm to CodeSmart because of the failure to fulfill this contractual obligation.

### 3.   Aiding and Abetting Shapiro's Breach of Fiduciary Duties

"Under Florida law, the elements of a claim for aiding and abetting breach of fiduciary duty are: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of that duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) substantial assistance or encouragement of the wrongdoing by the alleged aider and abettor." Am. Axess Inc. v. Ochoa, No. 18 Civ. 360 (GAP), 2018 WL 2197693, at *2 (M.D. Fla. May 14, 2018).

> In order for a claim of aiding and abetting to survive a motion to dismiss, the plaintiff must allege that the defendant had actual knowledge of the underlying wrongdoing. While the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud. Conclusory statements that a defendant actually knew are insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant should have known that something was amiss.

Lamm v. State St. Bank & Tr. Co., 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012) (alterations, citations, and internal quotation marks omitted), aff'd, 749 F.3d 938 (11th Cir. 2014).

As discussed in the MTD Order and above, Plaintiffs' conclusory allegations fail to plausibly allege that Franey had actual knowledge of Shapiro's misconduct or that she affirmatively assisted or encouraged his wrongdoing. See ICD

25

Capital, 2020 WL 815733, at *9.  Accordingly, leave to amend Count IV is denied as futile.

### D.  Claims Against CodeSmart

Having denied leave to amend Plaintiffs' derivative claims against Franey, the Court also must deny leave to amend Plaintiffs' claims as to nominal defendant CodeSmart because Plaintiffs do not bring any direct claims against the company and no derivative causes of action survive. See id. (dismissing claims against CodeSmart).

### IV.  Conclusion

For the reasons set forth above, Plaintiffs' motion for leave to file a second amended complaint is DENIED.

It is FURTHER ORDERED that, because Plaintiffs have had a full opportunity to amend their complaint to make it viable, Plaintiffs' claims against Franey and CodeSmart are dismissed with prejudice.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 83 and close this case.

**SO ORDERED.**

Dated:  New York, New York
        July 13, 2020

_John F. Keenan_
John F. Keenan
United States District Judge